# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANASTASIYA TYSH,<br><br>    *Plaintiff,*<br><br>v.<br><br>RAZOR TECHNOLOGY, LLC and ELEMICA, INC.,<br><br>    *Defendants.* | CIVIL ACTION<br><br>NO. 25-2497 |

**Pappert, J.**                                                                                            **September 9, 2025**

### MEMORANDUM

Anastasiya Tysh sued Razor Technology, LLC and Elemica, Inc., asserting claims under the Age Discrimination in Employment Act, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act and the Pennsylvania Whistleblower Law.  Elemica moves, purportedly pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims against it, though the motion argues Tysh lacks standing, not that she fails to state claims upon which relief can be granted.  The Court evaluates the Complaint under the appropriate standard and grants the motion in part, dismissing without prejudice Tysh's § 1981, Title VII, PHRA and Pennsylvania Whistleblower Law claims.

I

Tysh, a Ukrainian female born in 1972, worked as an IT Project Manager at Elemica from 2004 to 2019.  (Compl. ¶¶ 1–3, Dkt. No. 1.)  In 2019, to accommodate Tysh's "temporary relocation overseas," Elemica "restructured" Tysh's employment so

that she would now be "a full-time 1099 employee with Razor." (*Id.* ¶ 18.) Elemica still controlled Tysh's "job duties, daily tasks, client exposure, team and management structure"—Tysh's "only additional task . . . was to submit timesheets twice a month to Razor who then, in turn, billed Elemica to pay" Tysh. (*Id.* ¶ 20.)

From 2022 to 2023, Tysh would often flag for Chris Abato, an Elemica team manager, problems with a "deficient product offered . . . by Elemica." (*Id.* ¶¶ 29–32, 41.) Around this time, Abato began to favor Elena Jimenez, "a younger female employee of Elemica . . . grossly underperforming" on the same project as Tysh. (*Id.* ¶ 37.) Abato acknowledged his behavior, but his interactions "became more friendly and flirtatious." (*Id.* ¶¶ 37–40.)

Abato informed Tysh in April of 2023 "that all Razor contractors with Elemica would be terminated in the near future," (*Id.* ¶ 21), and "Razor would be contacting [Tysh] formally with details of her termination," (*Id.* ¶ 22). A few days later, Tysh lost connection to Elemica corporate networks, (*Id.* ¶ 23), and hasn't heard from Razor or Elemica since,[1] (*Id.* ¶ 25). Tysh later learned that she was the only Razor contractor terminated. (*Id.* ¶ 47.) Tysh was fifty-one years old at the time of her firing and believes Jimenez replaced her. *See* (*Id.* ¶¶ 46, 49).

## II

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged."

---

[1] The Complaint never identifies who fired Tysh. It only alleges that "Elemica and/or Razor" terminated her. *See* (Compl. ¶¶ 46, 56, 67, 71, 80, 84, 93, 96, 107, 111, 122, 126, 137, 140, 149–50).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[2] *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

### III

### A

In Counts I and V, Tysh alleges age discrimination under the ADEA and PHRA.[3] The ADEA makes it unlawful "to fire or refuse to hire someone because of that person's

---

[2] Elemica attaches to its motion a declaration from Chris Abato, (Decl. of Christopher Abato, Dkt. No. 18-2), which the Court disregards. *See Se. Pa. Transp. Auth. v. Drummond Decatur & State Props., LLC*, No. 21-4212, 2022 WL 784531, at *2 (E.D. Pa. Mar. 15, 2022) (finding that declarations attached to a motion to dismiss "clearly may not be considered" at the pleadings stage (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014))).

[3] The PHRA is generally interpreted in accord with its federal counterparts, like the ADEA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

age." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (citing 29 U.S.C. § 623(a)(1)). An ADEA claim requires that the plaintiff (1) was "at least forty," (2) was "qualified for the job," (3) "suffered an adverse employment action" and (4) "was replaced (or passed over in favor of) someone else 'who was sufficiently younger so as to support an inference of discriminatory motive.'"[4] *Id.* at 266 (quoting *Willis v. UPMC Child.'s Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015)). To survive a motion to dismiss, an age-discrimination plaintiff "need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Id.* (alteration in original) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Tysh alleges she was over forty, *see* (Compl. ¶ 49), was qualified for her job, *see* (*Id.* ¶ 53) and suffered an adverse employment action, *see* (*Id.* ¶¶ 45–46, 50–52, 106–08). She also contends Elemica replaced her with Jiminez, "a younger, less experienced employee." (*Id.* ¶ 46.) Although this allegation is "[u]pon information and belief," *see* (*Id.*), the Court accepts it as true because Elemica's employment records are "uniquely within [its] possession." *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). These allegations align with those in *Martinez*, where an age-discrimination claim survived dismissal given the plaintiff's allegations that his replacements were "significantly younger," "less qualified" and "less experienced." *See* 986 F.3d at 264, 267. Tysh also alleges that Elemica gave her "exceptional reviews . . .

---

[4] The Court does not confine itself to the grounds in Elemica's motion because the Complaint will only survive if it plausibly states a claim upon which relief can be granted, *Twombly*, 550 U.S. at 570, and doing so does not depend on Elemica's argument for dismissal. *See also* 5B *Wright & Miller's Federal Practice & Procedure* § 1349 (4th ed. 2025) ("The district court has broad discretion when handling motions to dismiss under Rule 12(b) . . . .").

year after year," *see* (Compl. ¶ 27), until Abato began to favor Jiminez in 2022, *see* (*Id.* ¶¶ 37, 43–44). And contrary to what Abato told Tysh, she "was the only [Razor contractor] who was actually terminated." (*Id.* ¶ 47.)

B

To state an age-discrimination claim, Tysh must further allege that she was an employee of Elemica and not an independent contractor.[5] *See Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013); *see also E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 37 (3d Cir. 1983). She does not explicitly do so, alleging rather that she was a "full-time 1099 employee with Razor," *see* (Compl. ¶ 2), and "performed work for Elemica as a contractor through" Razor, *see* (*Id.* ¶ 18).

As an initial matter, Tysh's allegations allow for the inference that Razor and Elemica acted, at least at some relevant time, as joint employers. *See* (*Id.* ¶ 19). Joint employers "exert significant control over the same employees." *Nolan v. TalentBurst, Inc.*, No. 22-4556, 2024 WL 1386036, at *5 (E.D. Pa. Mar. 29, 2024) (citing *N.L.R.B. v. Browning Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)). The Complaint plausibly alleges Elemica and Razor did so by acting together to hire and fire Tysh, *see* (Compl. ¶¶ 18–25), pay her, *see* (*Id.* ¶ 20), and provide and supervise her work, *see* (*Id.* ¶¶ 18–20).

At this stage, the Court cannot conclude that Tysh was not an Elemica employee for purposes of her ADEA claim. To distinguish between employees and independent

---

[5] Title VII cases guide an ADEA analysis of Tysh's employment status and Elemica's liability under a joint-employer theory. *See Pavlik v. Int'l Excess Agency, Inc.*, 417 F. App'x 163, 166 (3d Cir. 2011) ("Both Title VII and ADEA use the same test to determine whether an individual is an employee or an independent contractor." (citing *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 322–23 (1992))); *Vrabel v. Greater Johnstown Water Auth.*, No. 3:2006-73, 2008 WL 868152, at *6–11 (W.D. Pa. Mar. 31, 2008) (analyzing an ADEA claim using Title VII's joint-employer framework).

contractors, courts examine "the level of control the defendant[s] . . . exerted over the plaintiff: which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities." *Covington*, 710 F.3d at 119 (3d Cir. 2013) (alteration in original) (citation omitted).  Again, Tysh alleges Elemica controlled her day-to-day activities, *see* (Compl. ¶ 20), paid Tysh indirectly, *see* (*Id.*), and informed Tysh of her termination via Elemica employee Chris Abato, *see* (*Id.* ¶¶ 21–22).  Because "the precise contours of an employment relationship can only be established by a careful factual inquiry," the issue of Tysh's employment status is better suited for "resolution at the summary judgment stage, rather than at the motion to dismiss stage."[6] *Washington v. Client Network Servs. Inc.*, 590 F. App'x 26, 130 (3d Cir. 2014) (first quoting *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997); then quoting *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 768 n.5 (3d Cir. 2013)); *see also Clemente v. Allstate Ins.*, 647 F. Supp. 3d 356, 375 (W.D. Pa. 2022) (finding that the independent-contractor inquiry is "fact-intensive" and thus "ill-suited to resolution on the pleadings").

IV

In Counts II, III and VI, Tysh alleges claims of racial discrimination under § 1981, Title VII and the PHRA.[7]  Title VII makes it an "unlawful employment practice"

---

[6]    Tysh's potential joint-employer theory can also be examined more fully at summary judgment.  *See Rippy v. Phila. Dep't of Pub. Health*, No. 19-1839, 2019 WL 4849439, at *5 (E.D. Pa. Sept. 30, 2019) ("When a plaintiff alleges *some* facts satisfying joint employer theory factors, even where there is a 'thin' factual record, . . . [the] pleading survives dismissal.") (footnote omitted); *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422 (E.D. Pa. 2016) (denying a motion to dismiss plaintiff's joint-employer theory because "discovery is often necessary . . . [to] define the contours of the employment relationship").

[7]    Racial discrimination claims under § 1981, Title VII and the PHRA all involve the same analysis.  *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 182 (3d Cir. 2009) ("[T]he substantive elements of a claim under § 1981 are generally identical to the claims of an employment discrimination claim

6

to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To state a claim for intentional discrimination under Title VII, Tysh must allege she (1) was a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action and (4) the adverse action occurred under circumstances giving rise to an inference of intentional discrimination. *See Summers v. Child.'s Hosp. of Phila.*, No. 21-3479, 2022 WL 4120283, at *5 (E.D. Pa. Sept. 9, 2022) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

An inference of discrimination can arise "in various ways, including by alleging that similarly situated comparators were treated more favorably by their employer, similar racial discrimination against other employees, or direct evidence of racial animus such as discriminatory statements allegedly made by supervisors." *Riley v. Borough of Eddystone*, No. 24-1835, 2024 WL 4137310, at *3 (E.D. Pa. Sept. 10, 2024) (citing *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)). A plaintiff can also raise an inference of discrimination by alleging that she was replaced by an individual outside of their protected class. *Id.* (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007)).

The Complaint contains no allegations about comparators, discrimination against other employees, discriminatory statements or actions by supervisors, nor any other facts raising a plausible inference of intentional discrimination against Tysh specifically or Ukranians generally. Tysh instead asserts "upon information and belief, [she] was replaced by an individual who was of a different race than [her], or in the

---

under Title VII."); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083–84 (3d Cir. 1995) (noting that the PHRA and Title VII are interpreted similarly).

alternative the position remained open," *see* (Compl. ¶¶ 70, 83, 125), but the Court does not credit such conclusory allegations. *See Riley*, 2024 WL 4137310, at *3 (holding a similar statement was insufficient to raise an inference of discrimination under Title VII); *Wright v. Providence Care Ctr., LLC*, No. 17-747, 2017 WL 6059679, at *7 (W.D. Pa. Dec. 7, 2017) (same for § 1981).

## V

In Counts IV and VII, Tysh alleges sex discrimination under Title VII and the PHRA. Intentional sex discrimination requires the same four elements as intentional racial discrimination. *See supra* Part IV; *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). The Complaint again fails to allege facts that could show Tysh was discriminated against because she is female. Her purported allegations of discrimination are entirely conclusory and insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## VI

In Count V, Tysh alleges age discrimination under the PHRA. The PHRA "does not protect individuals who neither reside nor work in Pennsylvania." *Blackman v. Lincoln Nat'l Corp.*, No. 10-6946, 2012 WL 6151732, at *5 (E.D. Pa. Dec. 10, 2012). The plaintiff's workplace, and not the location of the defendant's corporate headquarters or principal place of business, is "[t]he relevant location [] with regard to the PHRA." *Taylor v. Rodale, Inc.*, No. 4-799, 2004 WL 1196145, at *3 (E.D. Pa. May 27, 2004); *Blackman*, 2012 WL 6151732, at *6.[8]

---

[8] Tysh argues the PHRA applies to her because Elemica has "principal places of business in Pennsylvania." (Pl.'s Br. in Opp'n at 15, Dkt. No. 24.) At least two courts have rejected this argument. *Blackman*, 2012 WL 6151732, at *6 (citing *Taylor*, 2004 WL 1196145, at *9).

The PHRA is generally interpreted in accord with its federal counterparts, *see Kelly*, 94 F.3d at 105, which reflect the "well-established presumption against extraterritorial application of statutes." *Blackman*, 2012 WL 6151732, at *4. The PHRA itself embodies that presumption by focusing on "the people of the Commonwealth." 43 Pa. Stat. & Cons. Stat. Ann. § 952(a), (c). Limiting the PHRA to Pennsylvania residents and workers conforms with the holdings of "an overwhelming majority" of courts "that have addressed the jurisdictional reach of . . . state anti-discrimination laws." *Blackman*, 2012 WL 6151732, at *6.

Tysh does not state where she allegedly resided during the operative time frames. The Complaint sounds in the past tense, alleging that Tysh "has resided in this judicial district." (Compl. ¶ 9.) And Tysh concedes that she "temporar[ily] relocate[ed] overseas" and "worked remotely," (*Id.* ¶¶ 18–19), but never verifies that she returned.

Tysh appears to believe, incorrectly, that because she has resided in Pennsylvania in the past, the PHRA must apply to her in the present. Not so. The PHRA applies to "the inhabitants of" the Commonwealth, and "inhabit" means "to dwell in" or "to occupy permanently or habitually as a residence." *Blackman*, 2012 WL 6151732, at *3 (quotation marks and citations omitted). That definition speaks in the present tense. Having "resided" in the Commonwealth previously does not grant Tysh a roaming license to claim it as her permanent or habitual residence when it's convenient. *Cf. Jackson v. United Airlines, Inc.*, 32 F. Supp. 3d 557, 565 n.9 (E.D. Pa. 2014) (allowing a PHRA claim to proceed because the plaintiff "is a resident of Pennsylvania and was so during the relevant time period").[9]

---

9    Elemica also suggests Tysh's PHRA claim must be dismissed because she does not fit into the "two classes of independent contractors" the PHRA protects. (Def.'s Mem. of L. in Supp. at 8, Dkt.

9

VII

In Count VIII, Tysh alleges Elemica violated the Pennsylvania Whistleblower Law, which applies to an "[e]mployer," defined as a "[p]ublic body."[10]  43 Pa. Stat. & Cons. Stat. Ann. §§ 1422–23.  A "[p]ublic body" is "[a]ny other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* § 1422.  In the statute, "funded by or through" refers to money "specifically appropriated by a governmental unit," meaning that "a private entity does not qualify as a public body merely because it receives state funds through contracts with public programs or government agencies." *Lomaskin v. Siemens Med. Sols. USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) (quoting and citing *Grim v. May Grant Assocs.*, No. 18-2231, 2019 WL 358520, at *4 (E.D. Pa. Jan. 29, 2019)).  The Complaint here fails to allege facts that could show that Elemica is a "public body."

VIII

Courts should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).  Tysh may amend

---

No. 18-1.)  That argument presupposes that Tysh is an independent contractor and not an employee, again, an issue the Court cannot yet resolve.

[10]   An "[e]mployer" also covers an "individual," "partnership," "association," "corporation for profit," or "corporation not for profit" that "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body." 43 Pa. Stat. & Cons. Stat. Ann. § 1422.  Tysh does not allege that Elemica qualifies as such.

Counts II through VIII consistent with this Memorandum and to the extent she can allege facts sufficient to state a plausible claim for relief.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.